IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WILLIAM THOMPSON                                                                          PLAINTIFF

v.                                    Civil No. 07-5233

TIM HELDER, Sheriff,
Washington County, Arkansas;
RANDALL DENZER, Jail
Administrator, Washington
County Detention Center;
NURSE RHONDA BRADLEY;
DEPUTY JAMES BERTORELLO;
DEPUTY FRANK JOHNSON; and
DEPUTY BRIAN WALTON                                                                   DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, William Thompson (hereinafter Thompson), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Thompson contends his constitutional rights were violated when he was denied adequate medical care and subjected to unconstitutional conditions of confinement.

Defendants filed a motion for summary judgment (Doc. 31). Plaintiff responded to the motion and filed a cross-motion for summary judgment (Doc. 47 and Doc. 49). Defendants filed a response to the cross-motion (Doc. 54). The case is currently before the undersigned for the issuance of a report and recommendation on the summary judgment motion.

### I. BACKGROUND

On November 13, 2007, Officers Murphy and Stuley investigated a motor vehicle accident in which the driver of one vehicle had left the scene. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1. The driver of the vehicle then returned to the scene with a chain and began to walk

-1-

toward the car that had been wrecked. *Id.* The officers instructed him not to attach the chain to the wrecked car and to identify himself. *Id.* The driver, later identified as Thompson, refused to identify himself even after being warned he would be arrested. *Id.*

Thompson was arrested at 04:20 and booked by Officer Bertorello into the Washington County Detention Center (WCDC) at 06:43 on charges of obstructing governmental operations, one or no headlights, failure to register a vehicle, and for a Rule 8.1 hearing. *Defts' Ex.* 2. Before Thompson was formally booked into the WCDC, but while he was in custody, at 05:42 his blood sugar was checked and noted to be 212. *Defts' Ex.* 2; *Defts' Ex.* 6.

According to Thompson, while he was being booked in he became ill and lost his equilibrium. Doc. 51 at page 4. He maintains he was suffering from "hyperinsulinism." Doc. 50 at page 9. According to defendants, Thompson walked out of the door of the photo lab on his own without assistance. *Plff's Ex.* O (Doc. 50 at page 72). Defendants indicate Johnson had a hand on Thompson as he was escorted to the door due to his uncooperative demeanor. *Id.* Defendants state this is a trained escort technique. *Id.* Thompson, however, asserts that Johnson and Bertorello put their hands under his arm pits and escorted him from the photo lab door to the booking area lobby seating area. Doc. 50 at page 9.

Thompson had no medication with him when his property was inventoried as part of the intake procedures. *Defts' Ex.* 2. He indicated on his intake sheet that he had heart trouble, diabetes, and high blood pressure. *Defts' Ex.* 2; *Defts' Ex.* 6. He indicated he took Insulin R, nitro, and blood pressure medication. *Id.* Nurse Bradley noted his blood pressure was 142/76 and his pulse was 78. *Defts' Ex.* 3; *Defts' Ex.* 6. She also reported that Thompson stated he took ten different blood pressure medications a day and had last seen a doctor at the Arkansas

-2-

Department of Correction (ADC) four years ago. *Id.* He reported taking regular insulin on a sliding scale basis. *Id.*

Thompson denies he informed Nurse Bradley he had last seen a doctor four years ago. Doc. 50 at page 14. He asserts he told her that he had no doctor of his own that he saw regularly but that he used Mediquick, clinics and hospitals, etc., to obtain refills of his medications. *Id.*

Nurse Bradley decided to monitor Thompson's blood pressure and blood sugar. *Defts' Ex.* 6. She did not administer any blood sugar or blood pressure medicine to Thompson because, in her opinion, neither Thompson's blood pressure or blood sugar were high enough to call a doctor or take him to the emergency room. *Id.*

When Thompson stated he had not been seen by a doctor in four years, Nurse Bradley believed this indicated he was not taking blood sugar or blood pressure medication as he had previously stated. *Defts' Ex.* 6. According to Nurse Bradley, many factors can elevate blood pressure and blood sugar, such as eating greasy foods and drinking alcohol. *Id.* In Nurse Bradley's opinion Thompson was in a stable condition during the approximately three hours that he was incarcerated in the WCDC. *Id.*

While he was being held at the WCDC, Thompson contends the holding cell he was in was unsanitary. Doc. 51 at page 5. Specifically he maintains that there was urine, waste, and food on the floor. Doc. 51 at page 5; Doc. 57 at page 28.

Thompson was released on November 13th at 07:45 on a misdemeanor citation due to overcrowding. *Defts' Ex.* 2. In Nurse Bradley's opinion, Thompson was in a stable condition when he was released from the WCDC. *Defts' Ex.* 6.

Thompson was picked up by Kathryn L. Keller. *Plaintiff's Exhibit* J (hereinafter *Plff's Ex.*)(Doc. 50 at page 56-59). Keller received a call from Thompson indicating he was being released from the WCDC and she would need to come inside to get him. *Id.* During the phone call, Thompson appeared confused and could not tell Keller whether his blood pressure or blood sugar levels had been checked. *Id.* When she arrived at the WCDC, Thompson was wandering around the parking lot. *Id.* After Keller got him into the car, she tried to convince him to go to the emergency room. *Id.* Thompson just wanted to go home and take his medications. *Id.* Thompson told Keller he would take his blood glucose level at home. *Id.*

Thompson did not tell Keller the results of the test but just took his medications and went to sleep. *Plff's Ex.* J. Keller checked on him several times. *Id.* She indicates he remained confused and weak for an "unknown length of time." *Id.* Sometime after he "started returning to himself," Keller indicates Thompson went to the Free Clinic for Washington County. *Id.* Thompson asserts that Keller is a registered nurse. (Doc. 57 at page 26).

According to Thompson, he suffered from a deficiency of sugar in his blood as a result of not receiving his insulin. Doc. 51 at page 6. He states this caused weakness, mental disturbance, and "delirium coma." *Id.* He maintains he lost full consciousness for almost three months. *Id.* During this time, he slept. *Id.* He states his pupils were unequal, the left side of his face was numb, the left side of his upper lip sagged, and he had very little muscular response. *Id.* He maintains he suffered a mild stroke. *Id.*

Thompson submitted no grievances regarding his medical care at the WCDC or regarding his conditions of confinement there. However, he states it was because he had no way to obtain or submit a grievance. Doc. 50 at page 14; Doc. 51 at page 2. While he was at the WCDC,

-4-

Thompson asserts he never received notice regarding the grievance procedure or an opportunity to present his claims or views. *Id.* at page 18.

According to the medical records from the Dickson Street Clinic, Thompson received treatment there on September 7, 2004, February 3, 2005, March 2, 2005, and May 9, 2005, for diabetes, high blood pressure, and lower back pain. *Defts' Ex.* 4. Thompson was treated at the Northwest Arkansas Free Health Clinic on April 15, 2008, complaining of skin rash, chest pain, and a request for renewal of medication. *Defts' Ex.* 5. It was noted on his chart that he had been out of medication for three months. *Id.* He was treated again at the clinic on June 27, 2008, and it was noted that he had diabetes and was noncompliant. *Id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Defendants deny they exhibited deliberate indifference to Thompson's serious medical needs. Further they maintain Thompson was not subjected to any unconstitutional conditions of confinement. They also allege Thompson failed to exhaust the administrative remedies available to him. With respect to the official capacity claims, they maintain there is no evidence of an unconstitutional policy or custom or of a causal link between an alleged policy or custom and the alleged harm. Finally, with respect to the individual capacity claims, they contend their actions were in good faith and they are therefore entitled to the protections afforded by qualified immunity.

*__Failure to Exhaust Administrative Remedies__*

As amended by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Defendants maintain this lawsuit is subject to dismissal because Thompson failed to exhaust his administrative remedies. Thompson maintains the grievance procedure was only available to in-house detainees.

The PLRA's exhaustion requirement does not apply in this case because Thompson was not a prisoner when he filed the complaint. *See* Doc 1 (Complaint) and Doc. 2 (in forma

-6-

pauperis application). *See also Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005). The exhaustion requirement only applies to "person[s] incarcerated or detained." 42 U.S.C. § 1997e(h).

### *Denial of Medical Care*

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006)(deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care). "The Eighth Amendment does not guarantee all prisoners medical care commensurate with that enjoyed by civilian populations." *Hines v. Anderson*, 547 F.3d 915, 922 (8th Cir. 2008).

"Deliberate indifference is a higher standard than gross negligence and [Plaintiff] must prove that officials knew about excessive risks to his health but disregarded them and that their unconstitutional actions in fact caused his injuries." *Senty-Haugen v. Goodno*, 462 F.3d 876, 890 (8th Cir. 2006)(internal citations omitted). "Deliberate indifference is the equivalent to the criminal law standard of recklessness." *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007).

In this case, Thompson was arrested at 4:20 a.m. *Defts' Ex.* 1. He was at the WCDC by no later than 5:42 a.m. because this is the time at which Walton took his blood sugar level and

-7-

recorded it on the intake sheet. *Defts' Ex.* 2 at page 5. Thompson's intake time on his booking sheet is listed as 6:43 a.m. *Id.* at page 1. He was released at 7:45 a.m. *Id.* At most, Thompson was incarcerated at the WCDC for slightly over three hours.

Thompson had no medication on him when arrested. *Defts' Ex.* at pages 3-4. The medical records he has submitted do not show that he had any current prescriptions for heart, blood pressure, or insulin medication. *Plff's Ex.* I (prescriptions in 2004, 2005, and 2008). He was not under the regular care of a doctor and had last been under the regular care of a doctor when incarcerated at the ADC four years prior to the date of the arrest at issue in this case.

When Thompson indicated he needed medication and was not feeling well his blood sugar level was taken, Nurse Bradley was summoned, and she took his blood pressure and pulse. The blood sugar level, blood pressure, and pulse readings were recorded. *Defts' Ex.* 2 at page 5 and *Defts' Ex.* 3 at page 1. Nurse Bradley determined the blood sugar level and blood pressure readings were not high enough to call a doctor or to take Thompson to the emergency room. *Defts' Ex.* 6 at ¶ 7. While Thompson maintains she was wrong, medical malpractice alone does not constitute deliberate indifference under the Eighth Amendment. *Popoalii v. Correctional Medical Services*, 512 F.3d 488 (8th Cir. 2008).

Thompson's medical questionnaire indicates it was completed at 7:37 a.m. *Defts' Ex.* 3. He was released a few minutes later at 7:45 a.m. *Defts' Ex.* 2 at page 1. Thompson called Keller to pick him up. *Plff's Ex.* J. Although Thompson states Keller is a registered nurse, she does not indicate she provided him with any medical treatment or checked his blood sugar level, his blood pressure, or observed his pupils, or any problems with the muscles of his face. *Id.* She

does indicate that he seemed confused and weak, slept a lot for an undetermined amount of time, and that she attempted to convince him to go to the emergency room. *Id.*

Thompson asserts that having had diabetes for a number of years he is sufficiently versed in the symptoms to be able to describe what occurs when he does not have his medication in a timely manner. While this may be true, more is required to make out an Eighth Amendment claim. "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(internal quotation marks and citations omitted). "To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). By failing to submit evidence documenting that the alleged three hour delay in treatment had a detrimental effect on his health, Thompson has failed to raise a genuine issue of fact on an essential element of his claim. *See Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997)(no error in granting summary judgment in favor of defendants where neither plaintiff submitted verifying medical evidence indicating that delay in treatment of acute cardiac condition resulted in adverse effect).

### *Conditions of Confinement*

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). The Constitution does not mandate comfortable

prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

AO72A
(Rev. 8/82)

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case. Thompson alleges he was not issued proper foot wear and was forced to walk on a floor in the holding cell with urine, waste, milk, and dirt on it. Doc. 1 (Complaint); Doc. 51 at page 5; Doc. 57 at page 28. He also maintains the floor was cold. Doc. 1.

Here, Thompson was in the holding cell for less than three hours. He spent part of his time at the WCDC being photographed, fingerprinted, and sitting in the booking area. Doc. 52. In the affidavits he filed in support of his summary judgment motion (Doc. 51 and Doc. 52) he refers only to the holding cell as being unsanitary.

"[E]xtreme deprivations are required to make out a conditions-of-confinement claims. [O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 112 S. Ct. at 1000; *Myers v. Hundley* 101 F.3d 542, 544 (8th Cir. 1996); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Thompson was in the cell for a minimal amount of time. He suffered no injury or illness as a result of his exposure to the conditions. Thompson has failed to show the existence of any genuine issue of material fact on this claim. *See Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996)(Length of time prisoner is subjected to harsh conditions is critical factor in court's analysis in determining whether conditions of confinement violate Eighth Amendment, as conditions such as filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months).

-11-

## IV. CONCLUSION

I therefore recommend that defendants' motion for summary judgment (Doc. 31) be granted and plaintiff's cross-motion for summary judgment (Doc. 49) be denied. The case should be dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 20th day of July 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)